IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEF MAATUK, | ) | Case No. 1:16-CV-03023 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| EMERSON ELECTRIC, et. al., | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.     Introduction

In December 1997, Josef Maatuk on behalf of his DBA business, "Max Em," and Therm-O-Disc, Incorporated ("TOD") entered into a confidentiality agreement ("CDA") so that TOD could evaluate Maatuk's multi-function liquid sensor technology for potential licensing to TOD. Between 1997 and 1999 Maatuk provided TOD information related to the Sensor.  In August 1999, TOD informed Maatuk that it had decided not to pursue the opportunity.  But the parties' relationship, brief though it was, has now spawned three federal lawsuits with Maatuk twice claiming that TOD misappropriated the trade secret information concerning the multi-function liquid sensor he provided to pursuant to the CDA.

Initially, after receiving a cease and desist letter from Maatuk alleging patent infringement and trade secret misuse, TOD filed Case No. 1:00cv2105, seeking a declaratory judgment that its conduct did not infringe any Maatuk patent and did not constitute a breach of the CDA.  Later, Maatuk commenced his own action in California, asserting claims for breach of

the CDA, trade secret misappropriation, fraud and negligence.  The California case was transferred to this district and assigned case number 1:00cv3056.  It was later consolidated with the first case.  Judge Gaughan granted summary judgment in favor of TOD on all issues on October 9, 2002.  She also overruled requests for reconsideration and relief from judgment on April 9, 2003.  The U.S. Court of Appeals for the Federal Circuit affirmed the judgment on August 25, 2003.

Maatuk filed the current suit over a decade after the first case ended asserting claims related to a patent issued to TOD in 2010, U.S. Patent 7,775,105 ("the '105 Patent").  Maatuk claims that TOD should have listed him as a co-inventor on that patent (First Cause of Action).  He further alleges that TOD misappropriated the trade secrets he disclosed under the CDA between 1997 and 1999 (Second Cause of Action) and that TOD has been unjustly enriched by that misappropriation (Third Cause of Action).  TOD has moved for summary judgment and/or judgment on the pleadings on all three of Maatuk's claims.  ECF Doc Nos. 47 & 48.

TOD's summary judgment motion asserts that laches bars Maatuk's first cause of action for correction of inventorship.  It asserts that the four year statute of limitations in Ohio's Uniform Trade Secret Act ("OUTSA") bars the second cause of action for misappropriation of trade secrets.  TOD further argues that Maatuk's trade secret misappropriation and unjust enrichment claims are barred by collateral and equitable estoppel.  TOD's motion for judgment on the pleadings argues that OUTSA preempts the unjust enrichment claim.

Because TOD has not shown that the undisputed evidence supports a laches bar on the First Cause of Action for correction of the '105 Patent, I recommend that TOD's motion for summary judgment on that claim be **DENIED**.  However, because the statute of limitations expired before this action was filed on the trade secret misappropriation claim, I recommend

**GRANTING** TOD's motion for summary judgment on the Second Cause of Action.  Such a ruling necessarily disposes of any claim for unjust enrichment damages under OUTSA and, to the extent Maatuk's Third Cause of Action is asserted under the statute, summary judgment must be **GRANTED**.  Should the Court adopt this recommendation, TOD's motion for judgment on the pleadings on the Third Cause of Action would be rendered moot.  Should the court not accept the summary judgment recommendation on the Second and Third Causes of Action, I recommend that the court **GRANT** judgment on the pleadings on Count III to the extent that claim asserts a common law claim for unjust enrichment.

## II.    Facts

The underlying facts of this case are similar to those involved in the first case.  In *Therm-O-Disc, Inc. v. Maatuk*, Case No. 1:00-CV-02105 ("*Maatuk I*"), Judge Gaughan set forth the operative facts, which remain undisputed here:  TOD is a corporation engaged in the manufacture and sale of sensors, controls, and thermally responsive switches and switching devices.  ECF Doc. No. 72, Page ID# 857.[1]  Maatuk is an individual doing business as Max-Em Engineering.  *Id.*  He developed a technology described as a "multi-function liquid sensing device" (the "Sensor").  *Id.* at Page ID# 858.

In 1997, TOD and Maatuk entered into a Confidentiality Agreement ("CDA").  *Id.*[2]  Afterward, Maatuk provided TOD with information regarding the Sensor for the purpose of evaluating it in connection with a potential licensing agreement.  *Id.*  In late July or August 1999, TOD informed Maatuk that it decided not to pursue the opportunity.[3]  On August 3, 2000,

---

[1] *Maatuk I* reference.
[2] A copy of the NDA is attached to Maatuk's complaint.  ECF Doc. 1, Page ID# 36-38.
[3] ECF Doc. No. 15-1, Page ID# 241.

Maatuk wrote TOD, accusing it of violating two of his patents[4] and breaching the CDA by "unilaterally pursu[ing] production" of the Sensor.  *Id.* at 859.

Shortly thereafter, TOD filed a declaratory judgment action against Maatuk – *Maatuk I* – and Maatuk filed a complaint of his own against TOD [the California case].  *Id.*  Upon consolidation in this court, Maatuk's claims were treated as counterclaims.  *Id.*  TOD moved for summary judgment on Maatuk's breach of contract and misappropriation of trade secrets counterclaims, as well as on its own declaratory relief claims for patent non-infringement and patent invalidity.  *Therm-O-Disc, Inc. v. Maatuk*, Case No. 1:00-CV-02105, ECF Doc. No. 89, Page ID# 2391-2392.  Maatuk never opposed the motions and Judge Gaughan granted judgment in TOD's favor.  *Id.* at Page ID# 2392.  In doing so, the court first struck Maatuk's answer, defenses, and counterclaims for his failure to comply with the court's discovery order.  Id. at Page ID# 2393-94.  Next, the court granted summary judgment to TOD on Maatuk's breach of contract claim, finding that TOD's evidence demonstrated that it never manufactured or produced a liquid sensor as Maatuk had claimed.  Id. at Page ID# 2395.  The court also granted summary judgment to TOD on Maatuk's trade secret misappropriation claim, stating:

> Defendant's Counterclaim for Trade Secret Misappropriation (Count Two) also fails because Maatuk has not identified with the specificity required under the Ohio Uniform Trade Secrets Act, Ohio Revised Code § 1333.61, et seq., a precise description of his alleged trade secrets allegedly misappropriated as he has failed to respond to relevant interrogatories or to comply with this Court's Orders regarding discovery. Nor has defendant demonstrated misappropriation.

*Id.* at Page ID# 2397.

On August 17, 2010 – eight years after the dismissal of *Maatuk I* – the USPTO issued the '105 Patent.  ECF Doc. No. 1, Page ID# 4.  The '105 Patent listed two TOD employees

---

[4] Maatuk accused TOD of infringing U.S. Patents Nos. 5,730,026 and 5,908,985.  These patents were later invalidated by Judge Gaughan in *Maatuk I*.

(Zimmerman and Bernd) as the inventors, and TOD as the original assignee.  ECF Doc. No. 1,

Page ID# 2; ECF Doc. No. 35, Page ID# 434.

Exactly six years later, on August 17, 2016, Maatuk filed this action, asserting three

causes of action: (1) correction of inventorship, (2) misappropriation of trade secrets, and (3)

unjust enrichment.[5]  *See* ECF Doc. No. 1.  The First Cause of Action alleges that Maatuk

contributed non-obvious limitations to several claims in the '105 Patent (including Claims 1, 2,

5, 8, 9, and 12).  Id. at Page ID# 11, ¶ 33.  He acknowledges that he only provided information to

TOD pursuant to the CDA.  Id. at Page ID# 2.  Thus, all of the claimed trade secrets at issue

were disclosed between 1997 and 1999.  See ECF Doc. 15-1, Page ID# 241.  The Second Cause

of Action asserts that TOD disclosed Maatuk's confidential information to "third parties" and by

including the technology in the '105 Patent.  Id. at Page ID# 13, ¶ 41.  The Third Cause of

Action alleges that TOD profited from the information Maatuk disclosed to it and will be

unjustly enriched if allowed to profit from it without compensating Maatuk.  Id. at Page ID# 14,

¶ 46.  Maatuk specifically alleges that TOD obtained information about elements described in

certain '105 Patent claims pursuant to the CDA.  Id. at Page ID# 2.  However, Maatuk claims

that he could not have become aware of TOD's misappropriation until August 17, 2010, the date

of the issuance of the '105 Patent.  Id. at Page ID#11.  Maatuk asserts that he first became aware

of the '105 Patent in October 2014. ECF Doc. 49, Page ID# 878-879.[6]

---

[5] Maatuk originally filed his complaint in the U.S. District Court for the Central District of California,
Case No. 16-CV-06177. In addition to T-O-D, Maatuk also named Emerson Electric Co. and two former
TOD employees Bernd Zimmerman and Prasad Khadkikar. Upon defendants' motions decided December
19, 2016, Emerson Electric Co., Zimmermann and Khadkikar were dismissed from the case, and the case
was transferred to this District.
[6] Although Maatuk filed a declaration concerning certain facts he asserts to be true (ECF Doc. 49, Page
ID# 13-15), the assertion concerning his lack of awareness concerning the '105 Patent was not included
therein; it only appears in the body of his opposition brief.  Because Maatuk is proceeding pro se, the
court will treat the statements in his brief as though they were declarations given the fact that he
personally signed the declaration and included it at the foot of his brief.

III.    **Standards of Review**

    A.    **Summary Judgment**

Federal Rule of Civil Procedure 56 provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp., v. Catrett*, 477 U.S. 317, 322-23 (1986).  A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jones v. City of Franklin*, 677 Fed. Appx. 279, 281 (6th Cir. 2017).  In reviewing a motion for summary judgment, the court must view the inferences drawn from the underling facts "in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991).  The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party.  *Jones*, 677 Fed. Appx. 279, 282 (6th Cir. 2017) (citing *Banks v. Wolfe Cnty. Bd. Of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003)).  Therefore, in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere "scintilla of evidence" is insufficient.  *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

B.       **Judgment on the Pleadings**

Federal Rule 12(c) provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The applicable standard of review for a motion for judgment on the pleadings is that for a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  *Jones v. City of Franklin*, 677 Fed. Appx. 279, 282 (6th Cir. 2017); *EEOC v. J.H. Routh Pacing Co.,* 246 F.3d 850, 851 (6th Cir. 2001).

The consideration of a motion to dismiss requires the court to accept the complaint's well-pleaded factual allegations as true and construe the complaint liberally in a light most favorable to the plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Jones*, 677 Fed. Appx. 279, 282 (6th Cir. 2017).  Although our decision rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Amini v. Oberlin Coll*., 259 F.3d 493, 502 (6th Cir.2001) (*quoting Nieman v. NLO, Inc*., 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis omitted).  The complaint is not to be dismissed "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  However, the complaint must set forth "more than the bare assertion of legal conclusions."  *Eberhard Architects, LLC v. Bogart Architecture, Inc.*, 314 F.R.D. 567, 570 (N.D. Ohio 2016) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)).  A dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489-90 (6th Cir. 1990).

IV.     **Summary Judgment Analysis**

A.      **Count I  - Correction of Inventorship**

Maatuk claims that he contributed "non-obvious limitations to numerous claims of Patent 7,775,105" and is therefore entitled to have the '105 Patent corrected to list his name as a co-inventor.  ECF Doc. No. 1, Page ID# 11-12.  Specifically, he alleges that some of the claims in the '105 Patent were based on the information disclosed to TOD pursuant to the CDA.  For example, Maatuk alleges he provided information to TOD about how to build the devices listed in Claims One, Two, Five, Eight, Nine, and Twelve. ECF Doc. No. 1, Page ID# 12.

35 U.S.C. § 256, authorizes a court to add an omitted co-inventor to an issued patent:

(a) Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

(b) The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256 (2006).

TOD contends that Maatuk's § 256 claim is barred by the doctrine of laches.  ECF Doc. No. 47-1, Page ID# 512-14.  "Laches is an equitable defense that may bar an inventorship claim." *Serdaravic v. Advanced Med. Optics., Inc.*, 532 F.3d 1352, 1358 (Fed. Cir. 2008).  To prevail on a laches defense, a defendant must establish that (1) the plaintiff's delay in filing suit was "unreasonable and inexcusable" and (2) the defendant suffered "material prejudice attributable to the delay."  *A.C. Aukerman v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028

(Fed. Cir. 1992). However, rather than presenting any Rule 56 evidence or arguing that Maatuk's delay in bringing suit was unreasonable or that it suffered material prejudice, TOD argues that it is entitled to a rebuttable presumption of laches. ECF Doc No. 47-1, Page ID# 512-13. If the rebuttable presumption of laches attaches, TOD need not prove the elements of unreasonableness or prejudice. *Serdarevic v. Advanced Med. Optics, Inc*., 532 F.3d 1352, 1359 (Fed. Cir. 2008). Instead, Maatuk would be required to rebut the presumption. The record reveals that TOD has failed to establish its entitlement to the laches presumption.

In the context of § 256 co-inventor actions, a rebuttable presumption of laches attaches if *six years* passed between the time when the allegedly omitted inventor knew or should have known of the issuance of the disputed patent. *See Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,* 988 F.2d 1157, 1163 (Fed. Cir. 1993); *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1334 (Fed. Cir. 2012). However, the Federal Circuit has held that the laches clock does not start to run until the date the patent is *issued. See Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1335 (Fed. Cir. 2012) ("[W]e . . . hold that the laches period for [a] § 256 correction of inventorship claim begins to run when the omitted inventor knew or should have known of the issuance of the patent, regardless of whether the omitted inventor knew or should have known of the omitted inventorship while the patent application was pending . . . .") (Quotations omitted); § 256 ("Whenever through an error a person is named in an issued patent as the inventor, or through error an inventor is not named in an *issued patent*....") (emphases added); *see also HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co*., 600 F.3d 1347, 1354 (Fed.Cir.2010) ("Once a patent issues, . . . 35 U.S.C. § 256 provides a private right of action to challenge inventorship . . . .") Under well-established laches principles, "[a] cause of action cannot be barred by laches before it accrues; it is never extinct when it comes into existence." *Davidson v. Grady,* 105 F.2d 405,

412 (5th Cir.1939); *see also Lamb v. Powder River Live Stock Co.,* 132 F. 434, 443 (8th

Cir.1904) ("Nothing could be more unreasonable or more certainly violative of constitutional

prohibitions than to bar rights of action because of the lapse of time prior to their accrual, when

they could not have been exercised.").  After all, there can't be a defect in an issued patent until

the patent actually exists.

For the rebuttable laches presumption to apply, TOD must show that Maatuk knew or

should have known of the *issuance* of the '105 Patent more than six years before he filed the

complaint.  Even assuming that Maatuk should have known that he wasn't listed as a co-inventor

on the '105 Patent on the day it was issued, the rebuttable presumption of laches does not apply

here.  The '105 Patent issued on August 17, 2010.  A rebuttable presumption of laches would not

attach until after six years passed.  Six years passed on August 18, 2016.[7]  Maatuk brought his

co-inventorship claim on August 17, 2016.  ECF Doc. No. 1.  Because he brought his claim

within six years of the patent issuance, TOD has not met its burden to show that the presumption

applies.[8]

Because TOD relied solely on the presumption of laches, it did not address the two

factors needed to establish laches without a presumption.  ECF Doc. No. 47-1, Page ID# 513-14.

"It has been repeatedly held that mere lapse of time does not constitute laches."  *Advanced*

---

[7] The rebuttable presumption of laches requires that six years have *passed.*  August 17, 2016, is exactly
six years from the date of issuance.  Thus, six years would not have passed until August 18, 2016.
Moreover, under FRCP 6(a) the date triggering an event is excluded from the time computation.  Thus,
the time computation would begin August 18, 2010, and expired after six years passed (meaning not until
August 19, 2016).  FRCP 6(a) "Computing Time.  The following rules apply in computing any time
period specified in these rules, in any local rule or court order, or in any statute that does not specify a
method of computing time: (1) Period Stated in Days or a Longer Unit.  When the period is stated in days
or a longer unit of time:(A) exclude the day of the event that triggers the period…"
[8] TOD argues that *Serdaravic v. Advanced Med. Optics., Inc.,* 532 F.3d 1352 (Fed. Cir. 2008) is
"instructive here." ECF Doc. No. 47-1, Page ID# 513.  However, *Seradaravic* does not apply.  The
plaintiff in *Serdaravic* waited eight years after the patent issuance to file her lawsuit.  Thus, the
presumption of laches applied in that case.

*Cardiovascular Sys., Inc.*, 988 F.2d at 1161 *quoting Leimer v. State Mutual Life Assurance Co*., 108 F.2d 302, 305 (8th Cir.1940).  If "a presumption dissolves…the defendant is then 'put to its proof on both factors' and 'must affirmatively prove (1) unreasonable and inexcusable delay and (2) prejudice resulting from that delay.'"  *Lismont v. Alexander Binzel Corp.,* 813 F.3d 998, 1002 (Fed. Cir. 2016); quoting *Hemstreet v. Comput. Entry Sys. Corp*., 972 F.2d 1290, 1293 (Fed.Cir.1992).  Because the laches presumption does not apply here, TOD's failure to demonstrate the absence of a genuine dispute as to any material fact on the First Cause of Action dooms its motion for summary judgment on that count.  I recommend that summary judgment on the First Cause of Action be **DENIED**.

## B.      Counts II & III

TOD argues that Maatuk's misappropriation of trade secrets claim (Cause of Action Two) is barred by: (1) OUTSA's statute of limitations; (2) collateral estoppel; and (3) equitable estoppel.  ECF Doc. No. 47, Page ID# 507-12.  TOD argues that Maatuk's unjust enrichment claim (Count III) is barred by collateral and equitable estoppel.  Id.

### 1.      OUTSA Statute of Limitations

The Second Cause of Action alleges that TOD misappropriated trade secrets Maatuk had revealed pursuant to the CDA, by disclosing the information to third parties and using them in the '105 Patent.  ECF Doc. No. 1, Page ID# 13, ¶ 41.  The Ohio Uniform Trade Secrets Act ("OUTSA"), R.C. §§ 1333.61–69, establishes a state law claim for trade secret misappropriation. To prevail on such a claim, a plaintiff must establish: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret.  *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp*., 258

Fed.App'x. 860, 861 (6th Cir.2008) (interpreting R.C. §§ 1333.61, et seq.).  TOD argues that Maatuk's trade secret misappropriation claim is time-barred.

Under OUTSA, a cause of action for trade secret misappropriation accrues when the owner discovers or should have discovered that the trade secrets have been misappropriated and that he has suffered harm as a result.  Ohio Rev. Code § 1333.66.  The discovery rule is "an exception to the general rule that a cause of action accrues at the time the wrongful act was committed."  *Adcor Indus., Inc. v. Bevcorp*, 411 F.Supp.2d 778, 785 (N.D. Ohio 2005) (citing *Norgard v. Brush Wellman, Inc.*, 766 N.E.2d 977, 979 (Ohio 2002)).  "The discovery rule provides that 'a cause of action does not arise until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant.'"  *Id.* (*quoting Norgard*, 766 N.E.2d at 979).

TOD's supplemental brief in support of its motion for summary judgment (ECF Doc. 64) argues that any cause of action for misappropriation of trade secrets accrued when Maatuk first became aware or should have become aware of the breach of the confidential relationship between the parties.  Ohio Rev. Code § 1333.66 provides:

> An action for misappropriation shall be commenced within four years (1) after the misappropriation is discovered or (2) by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

Maatuk claims that TOD misappropriated his trade secrets when it was preparing to apply for the '105 Patent in 2003, after *Maatuk I* was concluded in 2002.  (ECF Doc. 65, Page ID# 1077)  He also acknowledges that he asserted as early as August 3, 2000 that TOD had misappropriated his trade secrets when he instructed his lawyer to send a cease and desist letter to TOD.  Id.; *see also* ECF Doc. 1, Page ID# 26-27 in *Maatuk I*, 1:00cv2105.  TOD filed *Maatuk I* in order to obtain a declaratory judgment that it had neither infringed any of Maatuk's patents nor misappropriated

his trade secrets.  Maatuk commenced his California action by asserting that TOD had

misappropriated trade secrets disclosed under the CDA between 1997 and 1999, just as he does

now.  (ECF Doc. 1, Page ID# 1, et. seq.)[9]  Here, however, he contends that his current claim

involves *different* trade secrets – from among those disclosed under the CDA between 1997 and

1999 – than were involved in in *Maatuk I*. (ECF Doc. 65 at Page ID# 1083).  Maatuk argues that

he could not bring a trade secret misappropriation claim related to the secrets he says were

incorporated in the '105 Patent until they were misappropriated in that specific way.  (Id.)  He

contends that there should be a separate statute of limitations determination for the distinct trade

secrets he contends TOD misappropriated when it submitted its application for the '105 Patent.

The Sixth Circuit has interpreted the OUTSA statute of limitations several times.  In

*Allied Erecting & Dismantling Co., Inc. v. Genesis Equipment & Manufacturing, Inc.*, 805 F.3d

701 (6th Cir. 2015), the court observed:

> The OUTSA contains a four-year statute of limitations which begins to run when
> "the misappropriation [of the trade secret] is discovered or by the exercise of
> reasonable diligence should have been discovered." Ohio Rev. Code. Ann. §
> 1333.66. Before the UTSA, courts split on how to apply a statute of limitations in
> trade secrets claims, with some courts applying a "continuing wrong" approach,
> and others a "single claim" approach. The UTSA "rejects a continuing wrong
> approach to the statute of limitations. . . . If objectively reasonable notice of
> misappropriation exists, three years is sufficient time to vindicate one's legal
> rights." UTSA § 6 cmt.; *see also* Ohio Rev. Code Ann. § 1333.66 ("For the
> purposes of this section, a continuing misappropriation constitutes a single
> claim.").

Id. at 704.  The Sixth Circuit contrasted the OUTSA single-claim accrual approach for trade

secret misappropriation claims with the manner in which copyright claims accrue when serial

infringement is alleged: "[In the copyright setting, [e]]ach time an infringing work is reproduced

or distributed, the infringer commits a new wrong.  Each wrong gives rise to a discrete claim that

---

[9] *Maatuk I reference* 1:00cv3056 (Maatuk's California case after transfer to this district, prior to the order
consolidating it with 1:00cv2015).

accrues at the time the wrong occurs.  In short, each infringing act starts a new limitations

period."  Id.  The copyright approach is what Maatuk seeks to have applied in this case.  But that

is not the applicable law.  The Sixth Circuit has consistently recognized that trade secret

misappropriation claims arise from a breach of the confidential relationship, not the taking of

specific items of property.

> The difference in the approaches rest[s] on the underlying rationale for punishing
> the misappropriation of a trade secret.  Jurisdictions that restarted the limitations
> period with each act of misappropriation did so on the theory that "a trade secret
> is in the nature of property, which is damaged or destroyed by the adverse
> use." *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407
> F.2d 288, 293 (9th Cir.1969) (explaining *Underwater Storage, Inc. v. U.S.
> Rubber Co.*, 371 F.2d 950, 955 (D.C. Cir. 1966)).  By contrast, jurisdictions that
> ran the limitations period only from the initial act of misappropriation believed
> that "[i]t is the relationship between the parties at the time the secret is disclosed
> that is protected," and that "[t]he fabric of the relationship once rent is not torn
> anew with each added use or disclosure, although the damage suffered may
> thereby be aggravated." Id.

*Kehoe Component Sales Inc., v. Best Lighting Products, Inc.*, 796 F.3d 576, 583 (6th Cir. 2015).

Here, Maatuk's entire argument rests on his belief that he should be allowed to assert a new

trade secret misappropriation claim because of the alleged conduct of TOD beginning in 2003

when it was preparing to apply for the '105 Patent, even though he had undisputedly asserted a

trade secret misappropriation claim in *Maatuk I*.  There is no dispute that all of the claimed trade

secrets Maatuk disclosed to TOD were revealed between 1997 and 1999, under the terms of the

CDA.  Hence, there can be no disagreement that Maatuk's trade secret misappropriation cause

of action accrued when he believed – and acted on his belief – that TOD had wronged him by

misusing information he had disclosed in confidence under the CDA.  He did so by filing

*Maatuk I*.  Under Sixth Circuit precedent, Maatuk's trade secret misappropriation claim accrued

at the latest when he instructed his attorneys to send the August 3, 2000 cease and desist letter to

TOD and then filed *Maatuk I*.

14

Although TOD's opening motion papers primarily argued the preclusive effect of *Maatuk I*, the more appropriate basis for evaluating the instant trade secret misappropriation claim is the statute of limitations, as TOD discusses more fully in its supplemental memorandum.

> [Defendant] Genesis filed its motion to dismiss, citing both the statute of limitations and claim preclusion as grounds for dismissal. The question remains whether the district court was correct in determining that the instant action was barred by the statute of limitations rather than by claim preclusion. If [the trade secret plaintiff – Allied] had alleged that Genesis was making use of new or different secrets or technology misappropriated in 2003, then the statute of limitations likely would be the correct ground for dismissal. However, because Allied is claiming only that Genesis continues to make use of the same misappropriated secrets that were exhaustively litigated in the prior suit, in our view claim preclusion is the more appropriate ground.

*Allied Erecting*, 805 F.3d at 708.  As in *Allied Erecting*, Maatuk alleges TOD misappropriated different trade secrets between 2003 and 2005 than what had been involved in *Maatuk I*.  In making this argument, Maatuk essentially argues the loss of a property right.  But as the Sixth Circuit has made clear, the UTSA focuses on the breach in the confidential relationship, not the loss of specific items of intellectual property.  *Allied Erecting* supports TOD's argument that the statute of limitations expired long before Maatuk commenced this action.

The undisputed facts show that on August 3, 2000 Maatuk's counsel sent a letter to TOD asserting that TOD had violated the CDA when it "obtained pivotal information provided by Max Em Engineering and then unilaterally pursued production of the sensor."  The letter threatened suit unless TOD ceased its wrongful conduct.  (ECF Doc. 47-9 Page ID# 635).[10]  Maatuk's belief that the CDA had been violated by TOD's misappropriation trade secrets was sufficient to trigger the commencement of the statute of limitations.  Maatuk's answer in *Maatuk I* asserted trade secret misappropriation as his third affirmative defense.[11]  Maatuk's counterclaim in *Maatuk I* asserted

---

[10] The letter was made a part of the record in *Maatuk I*, 1:00cv2015, ECF Doc. 1-3, Page ID# 26.
[11] 1:00cv2105, ECF Doc. 24, Page ID# 24.

causes of action for breach of contract and trade secret misappropriation, both resulting from TOD's alleged misuse of his trade secrets.[12]

Even if the court were to disregard *Maatuk I* and focus only on events occurring after that case was concluded, it is still apparent that the statute of limitations expired long before Maatuk filed this case. Maatuk's own supplemental memorandum in opposition to TOD's motion states that TOD began misappropriating trade secrets when it used Maatuk's information when it applied for its '105 Patent in 2003. (EFC Doc. 65, Page ID# 1082). Maatuk asserted, "[T]he misappropriation in question began in 2003." Because the OUTSA statute of limitations begins to run when an aggrieved party knew or in the exercise of reasonable diligence should have known that trade secrets were misappropriated, the question here is whether Maatuk was aware of the alleged 2003 use of his information at that time. He claims he did not become aware of the misuse of his information until October 2014, four years after the '105 Patent was issued in 2010. (ECF Doc. 49, Page ID# 878-880, 882).

Rather than focusing on whether Maatuk was aware of the information in the application that issued as the '105 Patent, either upon the application filing in 2005 or thereafter, TOD points to other misappropriation allegations that Maatuk made against TOD in his Patent Office filings. For example, TOD cites Maatuk's filing of an amendment to his own application for a patent, 10/736,116 (ECF Doc. 47-20, Page ID# 793-828), in which he expressly argued that TOD had misused trade secrets he had disclosed under the CDA between 1997 and 1999. There, Maatuk alleged:

- [TOD] did not have the technology of measuring continuous liquid level before I disclosed it to [TOD]. (Id at Page ID# 813)

---

[12] 1:00cv3056, ECF Doc. 1, Page ID#s 4, 5 (this was the case number assigned to Maatuk's California case once it was transferred to this district prior to its consolidation with TOD's action in *Maatuk I*.

- From December 1997 to August 1999, I advised Mr. Zimmerman [of TOD] on how to design and manufacture the continuous liquid level measurement method and apparatus described in his patent.  I have about 80 pages of technical information I supplied to him and his letter asking for technical help."  (Id. at Page ID# 813-814).

Thus, Maatuk alleged in March 2006 that TOD misused his information by including liquid level sensor technology in its 6,546,796 Patent ('796 Patent").  Therefore, even if the court were to ignore the plain implication of the allegations in *Maatuk I* – something we cannot do – there can be no dispute that Maatuk was alleging misuse after the conclusion of *Maatuk I* and more than ten years before he commenced this action.  Therefore, even if Maatuk's property-oriented view of trade secrets had support in the Sixth Circuit, his awareness that TOD was using confidential information he had disclosed under the CDA to foster its '796 Patent after the dismissal of *Maatuk I* put him under an obligation to inquire.  Had he done so, he would have learned that TOD filed the application that gave rise to the '105 Patent in 2005.[13]  There can be no factual dispute that upon reasonable inquiry, Maatuk would have discovered the filing of the application that issued as the '105 Patent, and the alleged misuse of his trade secrets, more than a decade before he filed this action.  Maatuk's Second Cause of Action is time barred.

Maatuk's supplemental memorandum asserts that TOD did not commit misappropriation when he disclosed his trade secrets under the CDA.  (ECF Doc. 65, Page ID# 1080).  That is not what TOD has argued.  As demonstrated above, TOD contends, and the undisputed facts demonstrate, that Maatuk made his initial allegation of misuse of his trade secrets when he had his lawyer send a cease and desist letter in 2000.  And Maatuk's USPTO filings weren't critical of TOD because it had *received* trade secrets under the CDA.  Instead, his filings directly

---

[13] TOD employees Khadkikar and Zimmerman filed the international and United States applications for Patent No. 7,777,105 on April 21, 2005 (ECF Doc. 1, Page ID# 4 at ¶ 11; ECF Doc. 47-3, Page ID# 523, et. seq.; ECF Doc. 47-4, Page ID# 558, et. seq.)

contended that TOD didn't even know how to do liquid sensor functions, that he taught TOD how to achieve these and that TOD's ideas were, in fact, his ideas.

Maatuk asserts that the Sixth Circuit holdings in *Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*, 521 Fed. App'x 453 (6th Cir. 2013) and *Stolle Machinery Co. v. RAM Precision Industries*, 605 Fed. App'x 473 (6th Cir. 2015) show that his trade secret misappropriation and unjust enrichment claims are not time barred. *Kendall Holdings* is factually dissimilar. There, the Sixth Circuit reversed summary judgment against the party claiming trade secret misappropriation because factual disputes existed concerning when the alleged misappropriation began. Here, there can be no doubt that Maatuk claimed he had suffered injury resulting from trade secret misappropriation in *Maatuk I*. *Stolle Machinery* does not support Maatuk's position either. There, the Sixth Circuit affirmed summary judgment against Stolle Machinery, the entity claiming trade secret misappropriation, because of an email it had sent indicating awareness of the individual defendant's alleged misappropriation nearly seven years before suit was filed. The court held:

> This court has previously endorsed the "confidential relationship" approach to the UTSA, under which "the first discovered (or discoverable) misappropriation of a trade secret commences the limitations period, placing the focus on the breach of the relationship between the parties at the time the secret is disclosed." *Amalgamated Indus. Ltd. v. Tressa, Inc.*, 69 Fed. App'x 255, 261 (6th Cir. 2003).
>
> * * *
>
> Even viewed in the light most favorable to Stolle, however, [Stolle sales representative Robert ] Gary's email to [Stolle President Greg] Butcher on November 14, 2003, shows that Stolle *was aware of the breach of the relationship between the parties* at that time.

Id. at 482 (emphasis added). The court concluded that it was the breach of the relationship, not the actual use of the information to produce competing products, which triggered the statute of limitations. Maatuk is correct that summary judgment was

reversed against a defendant entity that didn't exist when the statute of limitations was triggered.  But we have no similar fact here.

Maatuk also relies on *Raytheon Co. v. Indigo Systems Corp.*, 688 F.3d 1311 (Fed. Cir. 2012).  But that case too is factually distinguishable.  There, the court of appeals reversed the grant of summary judgment because it found the trial court had resolved a disputed issue of fact concerning when Raytheon knew or should have known that its former employees were using Raytheon trade secrets for the benefit of Indigo.  Here, no disputed issues of fact are being resolved.

As discussed above, Maatuk believed there had been a breach of his confidential relationship with TOD when he instructed his lawyers to send a cease and desist letter on August 3, 2000.  And he took further action when he filed his counterclaim in *Maatuk I*. He yet again evinced his view that the confidential relationship was breached in how he characterized TOD's development of the sensor disclosed in TOD's '796 Patent.  All of these events occurred more than four years before he filed this case.  Maatuk's Second Cause of Action under OUTSA for trade secret misappropriation is time barred.  TOD's motion for summary judgment on this claim should be GRANTED.

If Maatuk is barred from proceeding under OUTSA, then any claim he makes for unjust enrichment damages under the statute is also barred.  Therefore, to the extent Maatuk's Third Cause of Action is a claim for unjust enrichment damages under Ohio Rev. Code § 1333.63(A), summary judgment on that count must be GRANTED.

### 2.    Collateral Estoppel – Second and Third Causes of Action

TOD asserts that collateral estoppel is a further bar to Maatuk's trade secret misappropriation claim and bars his unjust enrichment claim.  ECF Doc. No. 47, Page ID# 514-

516.  Because the undersigned is recommending that summary judgment be granted on the Second and Third Causes of Action on statute of limitations grounds, the court need not reach the collateral estoppel issue.  However, a collateral estoppel analysis is presented in the event the court does not accept that recommendation.

"Issue preclusion, often referred to as collateral estoppel, 'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" *Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (quoting *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990)).  Four requirements must be met before issue preclusion applies: (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.  *Id.*  Here, the parties have disputed only the first of these requirements:  whether *Maatuk I* decided the issue in dispute.

TOD frames the issue decided in *Maatuk I* as determining what information Maatuk disclosed TOD and whether that information comprised trade secrets under the OUTSA.  ECF Doc. 47-1, Page ID# 515-16.  Although TOD asserts that Maatuk did not establish the existence of trade secrets in *Maatuk I* (because he had not provided detailed information in response to discovery requests and court orders) a review of the record reveals that Judge Gaughan specifically found "that the confidential information referred to constitutes trade secrets."[14]  But

---

[14] *Maatuk I*, 00cv2105, ECF Doc. 72, Page ID# 867.

she also concluded that the details of the trade secrets were unknown.[15]  She further determined that Maatuk had taken reasonable efforts to maintain the secrecy of that information.  *(Maatuk I,* ECF Doc. 72, Page ID# 867-68)  Nonetheless, she granted summary judgment in TOD's favor because Maatuk failed to identify the trade secrets with the specificity required under OUTSA, and he did not demonstrate misappropriation.  *Id.,* ECF Doc. 89, Page ID# 2397.  Thus, Judge Gaughan did not decide that there were **no** trade secrets, as TOD suggests.  However, the conclusion is inescapable, as detailed in the prior section of this Report & Recommendation, that TOD's alleged misuse of information disclosed under the CDA was certainly raised in *Maatuk I.* Further, by granting summary judgment to TOD on Maatuk's trade secret misappropriation claim, an argument could be made that the issues raised by such a claim were actually litigated and resulted in a final judgment on the merits.  Without question, Maatuk had a full and fair opportunity to litigate these issues in the prior proceeding.

Plainly, the facts in *Maatuk I* and this case overlap.  However, Maatuk argues that the trade secrets at issue in *Maatuk I* were different from the trade secrets involved here.  And he contends that TOD did not make use of the particular trade secrets now at issue until after the conclusion of *Maatuk I.*  ECF Doc. 1, Page ID# 11; ECF Doc. No. 49, Page ID# 873.  In

---

[15] Judge Gaughan described the information provided by Maatuk generally as follows:

> Maatuk provided [TOD] with additional information regarding the development of the Sensor, including the names of suppliers of parties and material required for its manufacture.  (Countercl. ¶11).  In addition, Maatuk authorized [TOD] to provide a prototype of the Sensor to Copeland for the purpose of evaluation and comparison with competing devices.  (Countercl. ¶11).

> ***

> …Maatuk [also] explained to [TOD] "the specific performance of each part of the Sensor, the nature and character of its components and the necessary materials to build [it]."  In addition, Maatuk explained…the procedure for obtaining alternative components for the Sensor in order to develop similar sensors.  (Countercl. ¶ 13).

*Maatuk I*, 1;00CV2105 (ECF Doc No. 72 at Page ID# 858 and ECF Doc. No. 89, at Page ID# 2393.

response to Maatuk's argument, TOD simply reiterates: "Maatuk failed to establish that he possessed any trade secrets, and cannot, now, a decade-and-a-half later, resurrect his unsuccessful attempt."  ECF Doc. No. 52, Page ID# 943.

The court cannot conclude on the record presented in the two cases whether the trade secrets in *Maatuk I* are actually different from the trade secrets in this matter, because the specifics of the trade secrets have never been identified.  Thus, the issue of what the trade secrets actually were was never actually decided in *Maatuk I* and arguably can have no preclusive effect now.

If, as Maatuk claims, TOD didn't misappropriate the trade secrets alleged here until after Judge Gaughan dismissed *Maatuk I*, collateral estoppel would not apply.  As discussed above, the Sixth Circuit made it clear that claim preclusion is not the applicable defense when a trade secret holder alleges that the trade secret misappropriator misused different information:

> If [the trade secret plaintiff – Allied] had alleged that Genesis was making use of new or different secrets or technology misappropriated in 2003, then the statute of limitations likely would be the correct ground for dismissal. However, because Allied is claiming only that Genesis continues to make use of the same misappropriated secrets that were exhaustively litigated in the prior suit, in our view claim preclusion is the more appropriate ground.

*Allied Erecting*, *supra*, 805 F.3d at 708.  *See also, Smith v. S.E.C.*, 129 F.3d 356, 364 (6th Cir. 1997) ("Collateral estoppel doesn't apply when there are changed conditions or new facts that didn't exist at the time of the earlier judgment…"); *Putnam Pit, Inc. v. City of Cookeville, Tenn*., 221 F.3d 834, 840 (6th Cir. 2000)(finding that neither claim or issue preclusion barred suit despite the relatedness of the actions because the factual circumstances forming the basis for suit occurred after the prior lawsuit.); *Keweenaw Bay Indian Cmty. v. Khouri*, No. 2:16-CV-121, 2017 WL 2821776, at *6 (W.D. Mich. June 30, 2017) (finding that facts underlying plaintiff's

claims that were not available until after a prior related lawsuit were not and could not have been litigated in a prior lawsuit).

Considering the specific details of what Judge Gaughan actually decided in *Maatuk* I and judging the facts in a light most favorable to Maatuk, the undersigned concludes that TOD has not established the applicability of collateral estoppel to bar the Second or Third Causes of Action.

### 3.    Equitable Estoppel

Finally, TOD asserts that Maatuk is equitably estopped from asserting his claims for misappropriation of trade secrets and unjust enrichment.  The applicability of equitable estoppel is "committed to the sound discretion of the trial judge*." A.C. Aukerman Co. v. R.L. Chaides Contr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc).  The application of the defense depends on the facts of case before the court.  *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992).  *See also Hapmshire Cty. Trust Co. v. Stevenson*, 114 Ohio St. 1, 11 (Ohio 1926) ("[I]n applying estoppel, each case must be considered on its own facts.").  To establish equitable estoppel, a party must show:  (1) a factual representation by words, acts, or silence; (2) the representation was misleading; (3) the party seeking equitable estoppel actually relied on the representation, and that reliance was "reasonable under the circumstances and made in good faith"; and (4) the reliance was detrimental to the relying party.  *Sampson v. Sisters of Mercy of Willard, Ohio*, No. 3:12 CV 824, 2016 WL 660917, at *3 (N.D. Ohio Feb. 18, 2016) (citing *First Fed. Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc.*, 463 N.E.2d 636, 648 (Ohio 1983)).

TOD argues that Maatuk's failure to identify with specificity any alleged trade secrets (i.e., his "silence" in *Maatuk I*) induced TOD to conclude that there was no information disclosed

to TOD that deserved trade secret protection.  TOD contends it governed its conduct after *Maatuk I* based on that conclusion.  Even if that were true, TOD has not shown that it actually relied on the representation-by-silence to its detriment.  Furthermore, to the extent TOD relied on that conclusion TOD's reliance was not reasonable or in good faith.  Maatuk's motion for relief from judgment, filed nine days after Judge Gaughan's October 9, 2002 summary judgment order, made clear that his silence was not a tacit admission that he had no trade secrets but, instead, resulted from attorney error.  *Maatuk I*, 1:00cv2015, ECF Doc. No. 91.  Maatuk made similar arguments in a motion for reconsideration a few months later.  Id. at ECF Doc. No. 95.  Thus, TOD's assertion that Maatuk's silence induced it to conclude that Maatuk disclosed no trade secrets protection was not reasonable or in good faith.  Judge Gaughan's finding that trade secrets, albeit undefined, were involved further belies this assertion.

TOD has not shown that it relied on Maatuk's silence to its detriment and it cannot show that any such reliance, had it occurred, would have been reasonable or in good faith.  Accordingly, TOD is not entitled to equitable estoppel.

## V.      Analysis of TOD's Motion for Judgment on the Pleadings

TOD's motion for judgment on the pleadings asserts that Maatuk's common-law claim of unjust enrichment is preempted by Ohio Rev. Code §1333.67 because it "arose solely from facts identical to those supporting his claim for trade secret misappropriation."  ECF Doc. No. 48, Page ID# 867.  Section1333.67 of the Ohio Revised Code provides:

> (A) Except as provided in division (B) of this section, sections 1333.61 to 1333.69 of the Revised Code displace conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret.

> (B)  These sections do not affect any of the following:

> (1) Contractual remedies, whether or not based on misappropriation of a
> trade secret;
> (2) Other civil remedies that are not based on misappropriation of a trade
> secret;
> (3) Criminal remedies, including those in other sections of this chapter,
> whether or not based on misappropriation of a trade secret.

Ohio Rev. Code §1333.67.

Several judges in the Northern District of Ohio have found unjust enrichment claims to

be preempted by OUTSA when they are based on the same operative facts as a misappropriation

of trade secrets claim. *Hearthside Food Sols., LLC v. Adrienne's Gourmet Foods*, No. 3:13-CV-

00294, 2014 WL 5824762, at *4 (N.D. Ohio Nov. 10, 2014)(finding unjust enrichment claims

based on the use of alleged trade secrets preempted by OUTSA); *Office Depot, Inc. v. Impact

Office Prods., LLC,* 821 F.Supp.2d 912, 922 (N.D. Ohio 2011) (OUTSA preempted unjust

enrichment claim premised on same set of facts as misappropriation of trade secret claim);

*Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F.Supp.2d 722 (N.D. Ohio 1999)(finding that a

claim for unjust enrichment preempted by OUTSA). In *Allied Erecting and Dismantling Co.,

Inc. v. Genesis Equip. & Mfg., Inc.*, 649 F.Supp.2d 702, 721 (N.D. Ohio 2009); the court stated

that the appropriate scope of displacement of Ohio law claims is determined by the "same facts"

or "same proof" standard.

Here, Maatuk alleges the following to support his unjust enrichment claim:

If Therm-O-Disc is allowed to continue profiting from the information that Dr. Maatuk
disclosed to it, which Therm-O-Disc did not compensate Dr. Maatuk for, then Therm-O-
Disc will be unjustly enriched, because it will have received a benefit (Sales revenue
from the technology disclosed by Dr. Maatuk, and increased ability to control the market
in relevant sensor technologies via its control of Patent #7,775,105 which is based on the
technology disclosed by Dr. Maatuk) which Therm-O-Disc did not pay for. Dr. Maatuk,
however, will suffer a detriment to Therm-O-Disc because he will not be compensated
for the valuable technology that he has developed and shown to Therm-O-Disc.

ECF Doc. 1, Page ID# 14, ¶ 14.  Thus, Maatuk claims that TOD will be unjustly enriched by its ability to control the '105 Patent, using the technology Maatuk claims TOD misappropriated from him.  The proof of unjust enrichment by misappropriation (whether or not TOD actually was unjustly enriched thereby) depends on the same facts as the misappropriation of trade secrets claim.  Maatuk asserts that TOD was unjustly enriched by earning "[s]ales revenue from the technology disclosed" and by its "ability to control the markets."  *Id.*  This type of benefit only occurs from using the information.  Accordingly, TOD's use of Maatuk's information in any way not authorized by the CDA would result in unjust enrichment and would represent misappropriation of the information.  Therefore, Maatuk relies on the same operative facts of his claim for trade secret misappropriation.[16]  Maatuk's unjust enrichment claim is preempted by Ohio Rev. Code § 1333.67.  I recommend that TOD's motion for judgment on the pleadings on the Third Cause of Action for common law unjust enrichment be GRANTED.

## VI.    Recommendations

I recommend that TOD's request for summary judgment on the First Cause of Action be DENIED.  However, I recommend that TOD's motion for summary judgment on the Second Cause of Action be GRANTED.  To the extent Maatuk's Third Cause of Action is a claim for unjust enrichment damages under § 1333.63 of the Ohio Uniform Trade Secrets Act, summary judgment should be GRANTED.  Finally, and in the alternative, I recommend that TOD's motion for judgment on the pleadings on the Third Cause of Action, to the extent it asserts a common law unjust enrichment claim, should be GRANTED.

---

[16] In an effort to salvage this claim and show that his claim requires the consideration of other facts not required to prove the trade secret misappropriation claim, Maatuk has argued that TOD has also been unjustly enriched by saving the costs it should have incurred to develop the technology he disclosed under the CDA.  However, this 'saved development cost' argument is not supported by any Rule 56 evidence.

26

Dated: November 14, 2017

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).